Reed, J.
Plaintiff in error, a corporation, made the defendant its secretary. As such it was his duty to receive the moneys paid to the corporation, give the proper receipts or vouchers and turn over the funds collected to the treasurer of the company.
■ During the mouths of August, September, October and November, 1889, defendant was shown, by the day book by him kept, to have received of the funds of the company $528.15, which was not paid by him to the treasurer, but was kept in his private safe in the office. On the 6th or 7th of December it is alleged that the safe was broken open and robbed of its contents, including the money of the corporation, some individual money of defendant, and a small amount belonging to another person. The amount lost by the corporation for which suit was brought is not disputed. The defendant testified: “ I had about $100 of my own in there; the company’s loss was over $600; there was $59.40 in the safe belonging to Mrs. Livingston.”
It is alleged upon the part of the plaintiff that defendant should be held liable for the losses, by reason of not paying over the funds to the treasurer, and gross carelessness in keeping the accumulated fund in his private safe in the office.
*294 It was urged on behalf of the defendant that he should not be held liable, first, because he notified the treasurer of the money being in his office and he neglected to take it away; second, that the secretary received no salary for his services. We do not find either of these important in determining the casé.
As soon as the robbery was discovered a detectiye was called in (one Howard Thompson), who required of defendant a list of losses, which was given and reduced to writing by the detective, identified by two or three witnesses, and put in evidence. That statement, as made by the defendant, was as follows: “$250 in gold and currency, a $2,50 gold piece,” and some personal property. This must be taken to be the entire loss. He said nothing in regard to the ownership of the money, but by his testimony it will at once be seen that he intended it to be a statement of all that was taken. He says, “ I had about $100 of my own there; there was $59.40 belonging to Mrs. Livingston. The company’s loss was over $600, making in the aggregate $759.40.” The statement made does not correspond with either. The amount testified to as belonging to Mrs. Livingston and himself would be $159.40, taken from the amount given the detective would leave a balance of $93.10 belonging to his company or some one else. So, in such statement he must be presumed to have given the entire loss. It appears that the defendant had occupied an office with H. T. Jones and J. S. Small. They were present when the defendant gave the losses to the detective, and verified the correctness of the detective’s statement. It was also proved that a few days prior to the supposed robbery Mr. Jones called the attention of the defendant to the carelessness and insecurity of money in the safe, and asked him to examine the money. He did so, and witness Jones judged the amount in the safe to be about $300. It was principally gold. Of course the estimate was not intended to be accurate, as no count was made, but would not be likely to under-estimate over $400. After the robbery Mr. Jones said to him, “I asked you to *295 deposit that money the other day,” and he said, “ I did deposit $200 of the company’s money.” The defendant, when asked upon the trial in regard to that statement, said, “ I have no recollection of saying that. If I did I was very much mistaken.” That he did so state was testified to by Mr. Jones and Mr. Small. There is some slight discrepancy in the testimony of defendant on another point. He testified to putting in the drawer of the safe all the money received belonging to his company. When asked, “ Did you use any of it in your own business,” he answered, “No, sir. Not a cent.” Immediately after he admits the taking of $30, and that it was not in the safe, but was represented by his check.
The testimony of the treasurer shows that on former occasions, in settlement for moneys received by him, he paid “ Some currency and some cheeks. A great part would be in his own checks on the bank he did business with.” This not being denied would go far to establish the fact of his custom to use currency, when needed, substituting’ his own checks for it. The testimony to establish the defense was very meagre ; was unsatisfactory and insufficient. Admitting the robbery and waiving the carelessness and irregularity of his conduct, to exonerate himself he should have shown that all the loss of the company was in money, and that it was. actually in the safe at the time of the robbery :—unpaid checks of others, and his own unpaid checks substituted for money used, and of which payment could be and was stopped, could not be regarded as lost.
I have carefully examined the defendant’s testimony, and he, testifying to exonerate himself, nowhere swears that the amount he claims to have been lost to the company was all in money, and in that safe at the time of the robbery. The nearest he came to making such evidence was the following : “ Do you know how much money was there belonging to plaintiff company ? ” A. “I only know from Mr. Berbower’s statement. I got Mr. Beaton of Daniels & Fisher to run over the books, and he made it out that the company’s loss was a little over $600, and I notified the company.” *296 This was not proof of what was in the safe, but of the amount for which he was liable to account. Following the well established rule of the supreme court and this court, the court will not assume the functions of a jury and decide upon the weight of evidence to establish a fact where there is testimony to warrant the finding, but in this case there is an absolute want of testimony indispensably necessary to establish the defense, and exonerate the defendant, as above shown.
■ The judgment was against the defendant for $35, only $30 of which he admitted to have taken out of the fund, and $5 which had been paid. This judgment must’ be reversed for want of sufficient evidence to establish the defense, as above stated, and a new trial ordered, and upon such trial more attention can be paid to the questions of confusion and mixing the moneys of the company and.defendant, and his method of dealing with them, and as to negligence of the defendant than was given upon former trial.
To exonerate defendant it must be shown, first, that the funds of the company were kept separate and distinct from his own. Treating moneys received as his own, and his liability as that of a debtor for the amounts received, would be a conversion, and the loss his own ; second, that the loss did not occur through his negligence and failure to pay the money over, or through his negligence in the manner of keeping it. Disregarding his official duty, and regarding it only as an unpaid or gratuitous bailment, the amount of care required is that which a prudent man would give to his own property. To show that he gave it the same care that he did his own is not sufficient, if the testimony shows gross negligence in his own affairs. See Schouler on Bail., 44 and 47; Story on Bail., secs. 64 and 183.
There is a wide difference between the amount of diligence required from a paid bailee, and that required in case of a gratuitous bailment; but in the latter the bailee is held culpable and responsible for gross negligence. Having accepted the bailment, he is required to exercise a reasonable amount *297 of care according to the nature of the property. As to what constitutes gross negligence, no general rule can be laid down. Each case must depend upon its own circumstances, local custom, business usage, and, in the servant of a corporation, the duties assumed and the rules and requirements of the officers. See Giblen v. McMullen, Law Rep. 2 P. C., 335; Ryder v. Wombwell, Law Rep. 4 Exc. 32; Whitney v. Lee, 8 Met. (Mass.) 91; Smith v. First Nat'l B'k, 99 Mass. 605.
This discussion is based upon the theory of the defense, that defendant was an unpaid agent. Whether he was such or a paid agent is not satisfactorily settled. It appears that he was engaged in business for himself; that the corporation furnished him an office for the transaction of his own business as well as that of the company. Whether or not he was a hired agent does not depend upon .the amount of compensation received. If he accepted and agreed upon the amount as compensation, he became a hired bailee, and as such is held to a far greater degree of care and diligence. This question should receive more attention upon a new trial.

Reversed.